May it please the court. My name is Greg Wallace and I represent Janice Smith in her claim for disability insurance benefits under the Social Security Act. Ms. Smith is a 61-year-old woman who suffers from a number of medical conditions. She has coronary artery disease, she's had three stents placed in her heart blood vessel, she suffers from insulin-dependent diabetes, congestive heart failure, and renal insufficiency. Having paid into the system for more than 30 years, she seeks a fair hearing on her claim for disability. The ALJ did not give her that fair hearing for two reasons. Number one, the ALJ did not have good reasons for rejecting the opinion of Dr. Aramiva, who opined that Ms. Smith would be unable to sit for prolonged periods at work without elevating her legs. Professor, your time's short, we know the facts. The Thomas case came out on February 5. Are you familiar with it from this court, Thomas versus Berryhill? If you're not, just say no and go ahead if you are. Yes, I am. Why is that a terrible case for you? Because it approves the ALJ's decision to give little weight, where earlier assessments are inconsistent, later ones I'm paraphrasing, quoting. It seems, what do you say? I think that case can be, I represented Amy Thomas on that. It ended up being a reversal in our favor, but not on the treating doctor. I don't think that that case hurts us, because here you have an ALJ that there's nothing in the objective findings that substantiates that. It's improved with medication and cites this January 14th report saying no swelling. Well, on 12 out of 16 occasions that Dr. Aramiva treated Ms. Smith, she noted swelling. Now they range from minimal swelling or mild swelling to plus one or plus two type swelling to pitting edema, which is swelling that if you press on it with your thumb, it leaves a mark. It doesn't bounce back. And so in 75% of those occasions in which Dr. Aramiva treated Ms. Smith, she noted that she had a persistent problem with swelling in her lower extremities. That doesn't have to be true on July 31 of 2013? And don't all these later reports about that period of time all say no edema, no edema, President, no mention of edema? No, there's an August 13th report in which she indicated it was plus one on page 541 of the record. And so, and when she gave her opinion in December of 2013, which was the same month that she can't sit, when you put her in a work situation, she's not going to be able to sit for prolonged periods without elevating her legs. Now that's consistent with Ms. Smith's own testimony that she has to elevate her legs several times a day for 15 to 20 minutes of time because of the swelling in her lower extremities. And so given the fact that she has medical conditions that can produce this kind of edema, she has congestive heart failure, renal insufficiency, given Dr. Aramiva's blood pressure medication, and blood pressure medications can do that, yes. And it comes and goes. But in this particular case, the doctor observed at 75% of the occasions that she treated her. And that's, you know, consistent again with her testimony regarding the severity that she has to elevate her legs several times a day. But given the fact that she suffers from medical conditions, not just medications, but medical conditions that can cause this kind of persistent swelling in her lower extremities, given Dr. Aramiva's opinion, she treated, Dr. Aramiva treated Ms. Smith on 18 occasions between April 2012 and November 2013. She is familiar with Ms. Smith's condition here. And given the fact, given her testimony, the ALJ should have included some restriction in his RFC assessment that said at least something to the effect of, you know, she needs to elevate her legs every hour or two hours or whatever. Instead, the ALJ's RFC assessment upon which he determined that she could perform her past sedentary work has no mention whatsoever of any of the effects of the swelling in her lower extremities. This leads to the aspect of this field that's unusual for me. The VE testified by interrogatory answer two months after the hearing. So what RFC did the VE consider? Was his opinion about past relevant work with or without leg propping? And does that, those things matter? That is an unusual procedure. I think the VE was sick the day of the hearing. Because of step four? But it has happened before. And sometimes what will happen is ALJs will submit these interrogatories. And in this particular case, if you look at the set of interrogatories, the ALJ poses a hypothetical to the VE that is similar to if the VE had been present at the hearing. And based on that hypothetical, the VE gives his opinion that she can perform her past work as a telephone call operator or as a sales operator and indicates that in those interrogatories. So it essentially functioned here the same way as if the VE had been present at the hearing. It was just that testimony from the VE was obtained after the fact, subject to our ability to cross examine the VE in those cases. But the important point here is that the RFC, the hypothetical incorporated the ALJ's RFC, which had no restrictions on her ability to sit based on the need to elevate her legs periodically during the day. And that's what her treating doctor said she needed to do. That's what she said she needed to do. And her treating doctor's opinion is confirmed by the multiple occasions in which her treating doctor observed her at the time she treated her in her office with swelling in her lower extremities. Well, since her past relevant work was sedentary, what bothers me is the extent to which needing to prop up your legs would make you, would preclude you from doing the past relevant work. Exactly. And since this And we don't have that. We don't have that because the ALJ, because the vocational expert was not asked to consider that limitation. Now, it might be that the vocational expert would have said, well, no, there's not any, this would not interfere with these types of jobs at all. But our argument is that the VE should have at least been able to consider that, and the ALJ failed to include any restriction in his hypothetical to the VE that included the need to elevate her legs periodically during the workday. And that's the error here that the ALJ unfortunately committed. Now, the other thing the ALJ did was that, you know, I have to correct something in our brief. We said she has a 20-year work history. Actually, if you look at her earnings record, she has a 30-plus-year work history. And there is no mention of that work history in the ALJ's credibility assessment. Now, Pulaski requires that the ALJ consider a claimant's work record, and the Nunn decision in this case says that a claimant with a good work record is entitled to substantial credibility. In this case, there is no mention. Now, I understand there are cases from this circuit which say, well, the ALJs don't have to mention, you know, every single Pulaski factor. But in this case, you've got a 30-plus-year work history and which Pulaski requires the ALJ to consider that. And if there's no mention of that in the ALJ's opinion, how do you know? How does anybody know whether the ALJ even considered it? And in this case, I mean, I can understand where if it's a 10-year work history, maybe that's not important enough to mention. But a 30-year-plus work history here is important to mention. And for those reasons, we ask that this Court reverse and let her continue her claim. Thank you, Your Honor. Good morning. May it please the Court, my name is Elvie Jenkins, and I'm here today representing Nancy Berryhill, the Acting Commissioner for the Social Security Administration. Would you help if you speak up a little? I'm sorry. Acoustics aren't great for me in this room. My name is Elvie Jenkins, and I'm here today representing Nancy Berryhill, the Acting Commissioner for the Social Security Administration. Your Honors, today Mr. Wallace argues what he perceives to be two points of error with the agency's final decision. He argues that the ALJ rejected the treating physician's opinion and that the ALJ did not properly consider Ms. Smith's work history. However, the Commissioner respectfully submits that substantial evidence supports the ALJ's final decision that you affirmed today. On December 19th of 2013, the treating physician, Dr. Ermiva, drafted a letter in which she opined Ms. Smith was unable to sit for any length of time without propping her legs due to severe edema in the lower extremities. Contrary to Mr. Wallace's argument, the ALJ did not reject this opinion. Rather, the ALJ gave supported reasons for giving the opinion little weight. Specifically, Dr. Ermiva's opinion was inconsistent with her own treatment notes and the medical record as a whole. Second, the opinion was inconsistent with Ms. Smith's own statements. Third, the opinion was inconsistent with Ms. Smith's reported daily activities. When Dr. Ermiva gave her opinion, she also failed to provide any additional details or discuss any she felt Ms. Smith could not sit without elevating her legs. Most notably... My problem is with the leg propping, obviously. And the RFC for sedentary work had exceptions, as they often do. And here are the exceptions. Occasionally, climb stairs, never ladders, occasionally balance stoop, crouch, never crawl, avoid concentrated hazard exposure, no work driving. No mention of leg propping. Why on this record shouldn't the ALJ at least have addressed... All the ALJ basically said is the edema's improving. Improving with Lasix. And so the VE has given no... His attention is not directed to this issue. And I find that a little unusual and troubling. Well, the ALJ is only required to include specific limitations if they're supported substantially by the record. And in this case, we have evidence that her condition was not really controlled by medication, but the edema wasn't so severe that it did not establish that she was required... Well, you've heard what the other side says. That's true of one-fourth of the entries say no edema, but three-fourths say edema. Yes, most of the other records indicate... So substantial evidence is three-fourths, right? That's more than substantial evidence. But in addition to the evidence that says that there is no edema, there's also substantial evidence that the edema that was present was only mild. In some cases, it was considered only slight. There was two occasions. Mr. Wallace mentioned one, the plus one on August 13th, and there was another in August 2012 where it's plus two. But those are the only two occasions where it was more than mild. Okay, so most notably, Dr. Ermeva's own contemporaneous treatment notes reflected no edema. Overall, the records show that Dr. Ermeva treated Ms. Smith for over a two-year period, and her treatment notes consistently indicate there was no evidence of edema in the lower extremities. And on the occasions that it was present, which I just mentioned, it was only described as only mild or slight. Ms. Smith also followed up with a cardiologist, who she saw on five occasions between August 2012 and August 2013. Is there a listing in which the agency has discussed edema as a disabling condition? No, there isn't. Not specifically on edema. It wasn't in the ALJ's list of severe impairments, but it's, I think, a fairly common condition from things like hypertension and obesity. Well, interesting. ALJ obviously thought it was potentially significant. Yes, the ALJ did consider severe impairment, and he did consider the listings that, with the claimants' combined severe impairments, whether or not she would actually meet a listing. He actually didn't find that. But however, the doctor said that she couldn't sit. I know he didn't find the listing. I just wondered if, you know, that subpart A or whatever it is that goes on for pages and pages I look at when I have to. Is there any listing subpart that would shed some light on the extent to which the agency has found edema to be or not to be disabling? Well, I don't have the listings memorized, Your Honor. Oh, I know. But to my knowledge, there is no specific listing that addresses the severity of edema and whether or not it's disabling or would actually even meet a listing. But I'd like to also point out that Dr. Ahmaud Elsbar, the cardiologist, he saw her five times over a one-year period. He also observed that there was no edema except on one occasion in November of 2012. And even then, he described it as mild. And Ms. Smith even told Dr. Elsbar in August of 2013 that she was compliant with taking her medication, which was a diuretic, and that she was doing well overall. Thus, the evidence indicates not only is Dr. Ahmaud's opinion inconsistent with her own treatment records, but it is also consistent with other medical evidence in the record. Secondly, Dr. Ahmaud's opinion is inconsistent with Ms. Smith's own statements. On multiple occasions, she denied having any edema at all. And during other doctor visits, she continued to state that her symptoms were controlled by medication. And my last point, the LJ actually considered daily activities which Ms. Smith actually admitted that she could perform without having to elevate her legs. She described being able to drive, go to the movies, and she enjoyed going out to eat from time to time. The LJ considered that Ms. Smith also performed household chores such as doing laundry, sweeping, mopping, preparing meals twice a day, all of which were inconsistent with her allegations of disabling limitations. I should also note that overall, the evidence shows that Ms. Smith had no trouble standing or walking even when edema was present. This is significant because Dr. Aramiva indicated that she can't sit for any length of time without elevating her legs due to severe swelling, yet he or she provided no limitations in walking or standing, which stands to reason that if she had such severe edema, there would also be those limitations included in the opinion. Therefore, Your Honors, the Commissioner contends that the LJ considered the record as a whole and properly discounted the treating physician's opinion. This Court has held that the LJ may give a treating source less weight when it is inconsistent with or contrary to the record as a whole. They are older, but they are clear that the claimant of the good work history is entitled to substantial credibility. What about that? Well, to that point, regarding the LJ's credibility finding, Mr. Wallace's sole assertion of error is that the LJ did not address Ms. Smith's long work history in the decision. The implication is that somehow Ms. Smith's extensive work record makes her alleged limitations more believable. However, the LJ may discount subjective complaints when there are inconsistencies in the record as a whole. In his brief, Mr. Wallace cites to the claimant's work history as just one of several factors the LJ was required to consider when evaluating credibility. However, there are no requirements that the LJ discuss every factor. In fact, Mr. Wallace even acknowledges this point in his reply brief. Furthermore, while the LJ did not specifically mention Ms. Smith's work history in the decision, he discussed her prior work record at length during the administrative hearing at pages 40 through 45 while trying to determine her vocational profile. I want to ask a question related to Judge Loken's question about subpart A. If you look at edema, edema is a symptom of three medical conditions that this person complains of, hypertension, congestive heart failure, and renal insufficiency. And if you look at the combination of those three factors and you look at the edema, it really is a symptom of what's going on in those three different areas. And the question that I've got is that as you look at subpart A and you start looking out and you can look at the listed things, 6.02 and 6.11, and start messing around with that. But I mean, at the end of the day, what does it take? I mean, you know, you've got three quarters of the time where this woman's suffering from some edema, plus two edema when that's fairly significant stuff. You know, that's not mild or moderate. That's a form of pitting edema. And why is that not something that, given this long work history, we shouldn't be concerned about? I see that I'm out of time. May I proceed? You may, I guess. Well, at the end of the day, the ALJ is only required to include limitations that are supported by the evidence. Now, the commissioner concedes that, obviously, there are some symptoms here and the edema is not being ignored. However, the plaintiff has the burden of establishing that her symptoms and limitations and her impairments are disabling. And the ALJ is forced to look at the record that's before him and determine if those limitations are disabling. And that just hasn't been the case here. If there are no further questions in conclusion, the commissioner respectfully submits the substantial evidence that supports the ALJ's decision and requests that you affront the district court's decision. Thank you for your time. May it please the court. Unfortunately, Ms. Smith's edema is being ignored because there's no restrictions in the ALJ's RFC assessment. There were several occasions in which her edema was more than just mild. As late as August 2013, Dr. Aramida indicates more lower extremity edema for the last week and weight gain and one plus bilateral lower extremity edema. That's on page 542. I gave you the wrong page earlier, 541. It's 542. Now, why is it gone by September? September, flat statement, no edema present. And the LASIX is being given. Is that fatal? She was taking LASIX throughout this whole period of time. So, our argument is not, she had constant edema 24 hours a day. The swelling comes and goes. And what Dr. Aramida said is that it's triggered by prolonged sitting and she needs to elevate her legs. Thank you. Thank you, counsel. The case has been very well briefed and argued and these are always important issues that are taken under advisement. Does that complete the argument session? Yes, your honor. Very good. The court is in recess until nine o'clock tomorrow morning.